UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

FREDERICK M. HEON, JR., :
        Petitioner, :
         :
  v. : CA 12-44 ML
         :
RI ATTORNEY GENERAL'S OFFICE :
and ASHBEL T. WALL, :
        Respondents.[1] :

**REPORT AND RECOMMENDATION**

---

[1] This is an action for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Although Petitioner Frederick M. Heon, Jr. ("Petitioner" or "Heon"), was released from prison on March 12, 2001, the Director of the Rhode Island Department of Corrections, Ashbel T. Wall ("Director Wall"), is still properly named as a respondent. Heon remains on probation, and the entity which supervises him, Adult Probation and Parole, is a community-based program within the Department of Corrections, Division of Rehabilitative Services. See Rhode Island Department of Corrections' website, http://www.doc.ri.gov/probation/info.php (last visited July 25, 2012). Therefore, Director Wall remains the official ultimately responsible for enforcement of the conditions of Heon's probation and is properly named as a respondent. See Thomas v. Cate, 715 F.Supp.2d 1012, 1018 n.2 (E.D. Cal. Feb. 19, 2010)("Where the petitioner is on probation or parole, the proper respondent for a habeas corpus petition is the petitioner's probation or parole officer and the official in charge of the parole or probation agency or the state correctional agency.")(citing Ortiz-Sandoval v. Gomez, 81 F.3d 891, 894 (9th Cir. 1996); Rule 2(b), 28 U.S.C. foll. § 2254); see also Al-Marri v. Rumsfeld, 360 F.3d 707, 711 (7th Cir. 2004)("[W]hen custody takes a form other than physical detention–for example, parole or an obligation to report for military service–it is necessary to identify as a 'custodian' someone who asserts the legal right to control that is being contested in the litigation.")(citing Strait v. Laird, 406 U.S. 341, 92 S.Ct. 1693 (1972); Schlanger v. Seamans, 401 U.S. 487, 91 S.Ct. 995 (1971)); see also Rumsfeld v. Padilla, 542 U.S. 426, 439, 124 S.Ct. 2711 (2004) ("[I]dentification of the party exercising legal control ... comes into play when there is no immediate physical custodian with respect to the challenged 'custody.'").
    As the Court concludes that this action should be dismissed because Heon has not exhausted his state remedies, it is unnecessary to determine whether the "RI Attorney General's Office" is also a proper respondent. Cf. Ortiz-Sandoval, 81 F.3d at 894 (stating that the advisory committee note to the rules governing relief under § 2254 "contemplates a variety of possible respondents, including multiple respondents").

David L. Martin, United States Magistrate Judge

Before the Court is the State of Rhode Island's Motion to Dismiss "Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. §§ 2241, 2243, and 2254 (Docket ("Dkt.") #5) ("Motion to Dismiss" or "Motion"). The Motion seeks dismissal of the Application for a Writ of Habeas Corpus (Dkt. #1) ("Petition") filed by Frederick M. Heon, Jr. ("Heon" or "Petitioner"). The basis for the Motion is that Heon has failed to exhaust his state court remedies. This matter has been referred to me for preliminary review, findings, and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons stated herein, I recommend that the Motion to Dismiss be granted.

**Facts and Travel**

On January 8, 1991, Heon pled nolo contendere in the Providence County Superior Court to Indictment K1/89-700 B which charged him with first degree sexual assault and related offenses stemming from a September 6, 1989, attack on Irene Bassett ("Ms. Bassett").[2]  See Petitioner's Appendix[3] ("P.A."), Ex. 22 at 2

---

[2] The attack on Ms. Bassett is recounted in State v. Gardiner, 636 A.2d 710, 711-12 (R.I. 1994).

[3] Petitioner's Appendix ("P.A.") consists of 36 exhibits comprising more than 500 pages. The exhibits have been docketed as attachments to the Application for a Writ of Habeas Corpus (Docket ("Dkt.") #1) ("Petition"). However, the numbering of the attachments does not correspond to the numbering of the exhibits. Therefore, the Court cites to the exhibits by exhibit number rather than by attachment number. In addition, the Court utilizes the page numbering provided by the Court's Case Management/Electronic Case Filing System ("CM/ECF") when

(1/8/91 Plea Transcript). For the sexual assault, he was sentenced to twenty-five years with ten years to be served and the balance suspended with probation for fifteen years. Id. at 24-25. He received concurrent sentences of imprisonment and/or suspended sentences for the other offenses.[4] See id. at 25.

In recounting events during the nine years following Heon's 1991 sentencing, the Court draws upon the October 6, 2000, Report and Recommendation ("R&R") of Magistrate Judge Robert W. Lovegreen in Frederick M. Heon, Jr. v. George Vose, CA 00-186L ("First Federal Habeas Action" or "First Action"), see P.A., Ex. 6 ("R&R of 10/6/00"). On April 3, 1992, Heon filed the first of several applications[5] for post conviction relief ("PCR"), pursuant to R.I. Gen. Laws § 10-9.1-1 through 10-9.1-9, in the Rhode Island Superior Court. See id. at 2. As detailed by Magistrate Judge Lovegreen, the first PCR application was followed by:

---

citing to the exhibits.

[4] In the same proceeding, Heon also pled nolo contendere and was sentenced in an unrelated case, Information P2/91-91. See P.A., Ex. 6 ("R&R of 10/6/00"). However, the plea and resulting sentences were vacated in 2000, and they are not the subject of the present habeas action. As a point of information, however, the Court notes that Heon's application for post conviction relief in P2/91-91A was granted on May 19, 2000, and his previously entered plea of nolo contendere was vacated. See P.A., Ex. 33 (5/19/00 Order). The State amended the charges in P2/91-91A to aiding and abetting an escape (count 1) and conspiracy to aid and abet an escape (count 2), and Heon pled nolo contendere to the amended charges. See id. For count 1 he was sentenced to three years imprisonment, retroactive to April 27, 1997. See id. For count 2, he was sentenced to six months consecutive to count 1.

[5] It appears that the applications were filed under a single case number, KM-89-1290.

3

an "Amended Application" for PCR on January 7, 1995; a
"Supplemental Application" for PCR on February 13, 1995;
a "2nd Supplemental Application"[6] for PCR on January 19,
1996; a "2nd Amended Application"[7] for PCR on March 12,
1996; a Petition for Writ of Habeas Corpus with the Rhode
Island Supreme Court on May 3, 1996, which was denied on
June 27, 1996; a Motion for Reconsideration on July 8,
1996, denied on July 12, 1996[8]; finally, through
counsel, a second "Amended Application"[9] for PCR on
October 6, 1998.

Id. at 2-3.

Judge Lovegreen also recounted the travel associated with these various applications:

On January 17, 1995, Heon requested that the Kent County
Superior Court appoint counsel to represent him in his
application for PCR. The Department of the Public
Defender of Rhode Island ("DPD") refused to represent
Heon in his application for PCR by letters dated May 15,
1995, December 28, 1995, and January 4, 1996, because the
DPD felt that a conflict of interest existed between
their client Richard Fines and Heon, as they were co-
defendants in the same case. Furthermore, the DPD did
not believe Heon's case "raise[d] issues of substantial
merit" and that it had no "significant likelihood of
success." On September 13, 1996, Attorney C. Leonard
O'Brien entered an appearance in Kent County Superior
Court to represent Heon on K1/89-700B and KM 89-1290.
Attorney O'Brien also represented Heon "concerning new

---

[6] See P.A., Ex. 3 (Second Supplemental Application for Post-Conviction Relief).

[7] See P.A., Ex. 2 (Second Amended Application for Post-Conviction Relief).

[8] In a footnote appearing at this point in the Report and Recommendation, Magistrate Judge Lovegreen noted that "[t]he Rhode Island Supreme Court did not include any reasoning for its denial of Heon's state court habeas petition or his motion for reconsideration." Frederick M. Heon, Jr. v. George Vose, CA 00-186L ("First Federal Habeas Action" or "First Action"), R&R of 10/6/00 at 3 n.4.

[9] See P.A., Ex. 4 (Amended Application for Postconviction Relief and Memorandum in Support Thereof).

4

felony charges that were brought against him in the
spring of 1998 and the State's later attempt to impose
the suspended portion of his 1991 sentence."[10] In his
letter of August 28, 2000, Attorney O'Brien stated: "...I
have never sought nor been denied a hearing on a Petition
for Post Conviction Relief regarding Mr. Heon."

Id. at 3 (citations omitted)(alterations in original).

On April 13, 2000, Heon filed the First Federal Habeas Action, identifying five issues allegedly warranting relief.[11] See id. at 1, 3. First, he appeared to assert a claim of ineffective assistance of counsel based on an alleged failure to call various witnesses who would have presented exculpatory evidence. See id. at 3. Second, he alleged a "panoply of facts culminating in a claim of prosecutorial misconduct." Id. Third, Heon claimed witness perjury and "prosecutorial misconduct again, wherein Heon asserts that the victim in the crime to which he pled had fabricated testimony." Id. Fourth, was "another allegation of prosecutorial misconduct, this time in the form of concealing pertinent and exculpatory evidence from Heon." Id. Fifth, "Heon attests that other pertinent and exculpatory evidence was not disclosed to him, or to his attorney, before his plea." Id.

The petition underlying the First Federal Habeas Action was

---

[10] In a footnote appearing at this point, Judge Lovegreen noted that: "Neither Heon, nor Attorney O'Brien nor the State of Rhode Island have made clear to the Court precisely what formed the substance of these new charges. Because they do not appear to affect the disposition of the present motion, this Court inquires of them no further." R&R of 10/6/00 at 3 n.5.

[11] See P.A., Ex. 5 (Application for a Writ of Habeas Corpus in First Federal Habeas Action).

5

denied without prejudice on November 1, 2000, for failure to exhaust state court remedies. See P.A., Ex. 6 at 7 (First Action, Order of 10/30/00 (accepting R&R 10/6/00)). Heon sought a certificate of appealability from the Court of Appeals, see P.A., Ex. 7 at 1 (Memorandum in Support of Application for a Certificate of Appealability), but it was denied, id. at 13 (Court of Appeals Judgment dated 11/2/01). The Court of Appeals "conclude[d] that reasonable jurists could not debate the correctness of the district court's determination that petitioner's state remedies remain effective." Id. at 14. In reaching this conclusion, the Court of Appeals noted that:

> The state post-conviction petition filed by counsel had been pending for approximately 18 months when petitioner filed the instant habeas petition, a period of pendency that is not presumptively inordinate under present case law. Morever, the record suggests an explanation for some of the delay: in 1999, petitioner was considering whether to accept a state offer regarding the disposition of unrelated criminal charges in exchange for his withdrawal of the post-conviction petition, and counsel, skeptical whether the post-conviction claims were viable, was continuing to search for supporting legal theories. We have found nothing in the record to suggest that petitioner ever asked counsel to move for a hearing on the pending petition (and the letters of record show that counsel duly responded to communications by petitioner), or that petitioner ever complained to the state court about counsel.

Id. (internal citation omitted).

Heon was released from prison on March 12, 2001. See P.A., Ex. 15 at 3. It appears that no action was taken with respect to Heon's pending application for post-conviction relief until April

6

15, 2004, when it was dismissed for lack of prosecution. See id.; see also id., Ex. 8. Heon indicates that the dismissal occurred without notice to him. See id., Ex. 15 at 3. Heon further indicates that after being released from prison, he sought to obtain counsel utilizing his own financial resources. See id.

On February 26, 2008, Heon's new counsel filed an application for PCR in the state superior court under a new case number, PM-2008-1037, with the same issues as Heon's previous application for PCR but supported by documentation and affidavits "obtained thru [sic] private investigation services." Id.; see also id., Ex. 9 (Application for Post-Conviction Relief Pursuant to R.I.G.L. 10-9.1) at 1. In June 2009, Heon's counsel moved for discovery (depositions). See id., Ex. 15 at 3-4. Thereafter, the State of Rhode Island moved to dismiss the application under the doctrine of laches. Id. at 4. Following a hearing held on January 11, 2010, see id., Ex. 13 (Transcript ("Tr.")of 1/11/10 Hearing), a justice of the superior court granted the State's motion to dismiss, see id., Ex. 12 (Order of 1/19/10 granting State's motion).

Heon appealed the dismissal to the Rhode Island Supreme Court which on June 3, 2010, vacated the judgment and remanded the case to the superior court "for a hearing on the issue of laches." Heon v. State, 19 A.3d 1225, 1226 (R.I. 2010). In its order remanding the matter, the state supreme court noted that "the state did not present any evidence in support of its laches argument, and the

7

hearing justice did not make specific findings of fact." Id.

More than nineteen months passed before the hearing ordered by the state supreme court took place on February 2, 2012. At that proceeding the State again did not present any evidence and relied solely upon the argument of its counsel. See Tr. of 2/2/12 Hearing. That attorney asserted that "there is no way the State of Rhode Island can go back and prosecute a case from 1989 at this point in time ...." Tr. of 2/2/12 Hearing at 10.[12] As apparent support for this contention, he opined that securing testimony from the attorney who had represented Heon when he pled guilty "would be next to impossible." Id. at 11. Counsel similarly stated that securing testimony from the lead detective in the case, Scott Hornoff ("Hornoff"), "on behalf of the State of Rhode Island would be, I think it's fair to say, that would be impossible at this point ...." Id. Counsel noted that Hornoff had been convicted of murder, served time in prison, and was later exonerated. Id.; see also Hornoff v. City of Warwick Police Department, No. C.A. PC 2003-4264, 2004 WL 144115, at *1 (R.I. Super. Jan. 6, 2004). With respect to Heon's former attorney, Aurendina G. Veiga, the State's counsel indicated that she had subsequently become a magistrate in the state's traffic tribunal but was no longer serving in that

---

[12] A copy of the transcript of the February 2, 2012, hearing ("Tr. of 2/2/12 Hearing") in the state superior court has been provided by the attorney for the State who appeared before this Court for the March 27, 2012, hearing on the instant Motion to Dismiss. The Court has made this transcript part of the record by designating it as a hearing exhibit.

8

capacity and was "not even practicing law at this point in time."[13] Tr. of 2/2/12 Hearing at 11.

Heon, appearing at the hearing *pro se*, argued that the State's witnesses, including Hornoff, were available:

> THE PLAINTIFF: Miss Bessette,[14] the complaining witness, lives right here in East Providence, Riverside. All of the co-defendants, they're either in prison or in the State of Rhode Island. Mr. Hornoff lives in Warwick.
>
> THE COURT: Slow down, please.
>
> THE PLAINTIFF: Richard Stanton, retired from the Warwick Police, lives in Warwick. I can go over the other State witnesses. They either work here in downtown, Providence, or live down in Warwick. It's not that hard where we can't bring these people in.

Tr. of 2/2/12 Hearing at 14.

The hearing justice, however, rejected Heon's argument that

---

[13] On June 30, 2005, the Rhode Island Supreme Court accepted the resignation of Aurendina G. Veiga as a magistrate of the Rhode Island Traffic Tribunal. In re Aurendina G. Veiga, 879 A.2d 891 (R.I. June 30, 2005). The action followed a recommendation from the Commission on Judicial Tenure and Discipline that she be removed from her position. See id. (R.I. June 22, 2005).

[14] Petitioner is apparently referring to Ms. Bassett.

9

Hornoff was available, see id. at 20, finding as fact that: "Mr. Hornoff is not going to be a State witness in a case. Mr. Hornoff is in an adversarial position to the State because of his conviction and serving time for a crime that was ultimately shown he did not commit," id. Relative to Heon's claim that the complaining witness was in East Providence, the hearing justice found that "to bring her back before this court some 18 to 20 years after the fact would, in this [c]ourt's view, be prejudicial to the State, unconscionable, and certainly unfair to her." Id. at 21. The hearing justice also found that the delay attributable to Heon's inaction on his application for PCR "has caused irreparable harm to the State of Rhode Island in an attempt to refute the claims that the plea of the defendant at the time before Justice Campanella was not a knowing, willing, intelligent and voluntary plea to the case."[15] Id. at 22. After making these findings, the hearing justice again denied Heon's application "on the legal theory of laches." Id.

Heon filed the instant Petition on January 24, 2012, slightly less than ten days prior to the superior court hearing which resulted in the most recent denial of his application for PCR. On February 6, 2012, Chief Judge Mary M. Lisi issued an order for the State to file a response to the Petition. See Order (Dkt. #3).

---

[15] It appears that the hearing justice made this finding based solely on the delay associated with Heon's most recent application for PCR (PM08-1037) and not on the delay associated with the first application for PCR (KM 89-1290). See Tr. of 2/2/12 Hearing at 20 ("and I am not even considering the dismissal of the first case which Mr. Heon claims to not have known of").

10

The State requested a two-week extension of the time within which to file its response, see Motion for Enlargement of Time (Dkt. #4), which the Court granted on February 22, 2012, see Dkt. The instant Motion to Dismiss was filed on March 6, 2012. See id. On March 12, 2012, Heon filed his response. See Petitioner's Response to State's Motion to Dismiss (Dkt. #6) ("Heon's Response").

The Court conducted a hearing on the Motion on March 27, 2012. See Dkt. Because a transcript of the February 2, 2012, state superior court hearing was not available, the Court requested that counsel for the State submit a copy as soon as it became available. The transcript was submitted on April 5, 2012. Thereafter, the Court took the Motion under advisement.

On July 9, 2012, Heon filed a Supplemental Pleading in Support of Application for Writ of Habeas Corpus (Dkt. #9). The State responded to this filing on July 17, 2012. See Rhode Island Attorney General's Response to Supplemental Pleading in Support of Application for Writ of Habeas Corpus (Dkt. #10) ("State's Response"). In its response, counsel for the State represented that:

> the parties have agreed to a post-conviction relief "merits" hearing in the Rhode Island superior court. To that end, the undersigned may represent, a prosecutor in the Rhode Island attorney general's appellate and post-conviction relief unit has notified the superior court that such a "merits" hearing will, with the agreement of the parties, take place, and is making arrangements for the appointment of counsel to represent Mr. Heon at such "merits" post-conviction relief proceeding. Further, the undersigned may represent that he has, personally, had a

11

> number of conversations with Mr. Heon pertaining to scheduling, in the superior court, of a proceeding to appoint him counsel, and, as the undersigned believes Mr. Heon appreciates, Mr. Heon is free to call (401-274-4400, extension 2290) the undersigned at any time to discuss the scheduling of such appointment of counsel proceeding.

Id. at 1. The State's response concluded by stating: "as the State ... anticipates that Mr. Heon will, relatively soon, have a 'merits' post-conviction relief hearing in the Rhode Island superior court, and that Mr. Heon will be represented by appointed counsel at such hearing, the State sees no reason, at this time, for federal intervention." Id.

### Exhaustion

Before this Court may entertain a petition for habeas relief, a petitioner must exhaust his remedies available in state court. See 28 U.S.C. § 2254(b)(1)(A); see also Janosky v. St. Amand, 594 F.3d 39, 50 (1st Cir. 2010)("Consistent with this doctrine [of federal-state comity], a state prisoner must exhaust available state remedies before seeking federal habeas relief."); Byrnes v. Vose, 969 F.2d 1306, 1308 (1st Cir. 1992)("considerations of comity require that state courts be afforded the opportunity, in the first instance, to correct a constitutional violation before a federal court intervenes"). Exhaustion, in general, requires that a federal court not entertain an application for habeas relief unless the petitioner first has fully exhausted his state remedies with respect to each and every claim contained within the application. Adelson v. DiPaola, 131 F.3d 259, 261 (1st Cir. 1997). Although not

12

a jurisdictional bar to federal review of a state court conviction, exhaustion is "'the disputatious sentry [that] patrols the pathways of comity' between the federal and state sovereigns." Id. at 261-62 (quoting Nadworny v. Fair, 872 F.2d 1093, 1096 (1st Cir. 1989)) (alteration in original); see also Coningford v. Rhode Island, 640 F.3d 478, 482 (1st Cir. 2011)("This exhaustion requirement ... is born of the principle 'that as a matter of comity, federal courts should not consider a claim in a habeas corpus petition until after the state courts have had an opportunity to act'")(quoting Rose v. Lundy, 455 U.S. 509, 515, 102 S.Ct. 1198 (1982)); Nadworny, 872 F.2d at 1096 n.2 ("only in rare cases will federal courts reach an unexhausted claim").

A petitioner exhausts his state court remedies by fairly presenting his claims to the highest state court with jurisdiction to consider them. O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S.Ct. 1728, 1732 (1999); Picard v. Connor, 404 U.S. 270, 275-78, 92 S.Ct. 512-13 (1971); see also Hall v. DiPaolo, 986 F.2d 7, 11 (1st Cir. 1993)("habeas petitioner 'must fairly present–*or do his best to present*–' habeas claims to state's highest court"). This means that Heon must have presented the substance of his federal constitutional claims to the state appellate court so that the State had the first chance to correct the claimed constitutional error. See Lanigan v. Maloney, 853 F.2d 40, 42 (1st Cir. 1988). Only if the same factual and legal theory that forms the basis of

the petitioner's habeas petition has been presented to the state court will the petition for writ be properly before the federal court. Scarpa v. Dubois, 38 F.3d 1, 6 (1st Cir. 1994); Nadworny, 872 F.2d at 1096. A claim is not considered exhausted if the petitioner has the right under the law of the state to raise, by any procedure available, the question presented. See 28 U.S.C. § 2254(c).

**Discussion**

The State seeks dismissal of the Petition on the ground that Heon has not exhausted his state court remedies. See State of Rhode Island's Memorandum in Support of Its Motion to Dismiss "Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. §§ 2241, 2243, 2254" ("State's Mem.") at 2-4. Specifically, the State points to the fact that Heon can appeal the February 17, 2012, denial of his application for PCR by the hearing justice. See id. at 4.

Reading Heon's objection generously, he contends that his efforts to obtain relief in the state courts over the years demonstrate either that "there is an absence of available State corrective process," 28 U.S.C. § 2254(b)(1)(B)(i), or that "circumstances exist that render such process ineffective to protect the rights of the applicant," id. § 2254(b)(1)(B)(ii). In particular, Heon points to the fact that at the February 2, 2012, hearing the State again presented no evidence and made unsupported

14

assertions relative to its laches argument which was directly contrary to the remand order of the state supreme court. See Heon's Response at 1; see also Heon, 19 A.3d at 1226. Presumably Heon contends that requiring him to return to the state supreme court for the purpose of having that court again order the superior court to conduct a hearing on laches in accordance with its June 3, 2010, order is more than what the doctrine of exhaustion requires. Cf. Hankins v. Fulcomer, 941 F.2d 246, 250 (3rd Cir. 1991)("[I]t is the legal issues that are to be exhausted, not the petitioner.");[16] Harris v. Champion, 938 F.2d 1062, 1064-65 (10th Cir. 1991)("Many courts have recognized that 'a state convict is relieved of his obligation to exhaust state remedies whenever there has been excessive and unjustified delay in the disposition of his state direct or postconviction remedy proceeding.'").

Heon's argument is not without some persuasive force, especially in light of the fact that it took more than nineteen months for him to receive the February 2, 2012, hearing. See Lowe v. Duckworth, 663 F.2d 42, 43 (7th Cir. 1981)("A seventeen month

---

[16] The Third Circuit summarized the exhaustion requirement in Hankins v. Fulcolmer, 941 F.2d 246 (3rd Cir. 1991):

> The doctrine of exhaustion turns on the availability of state remedies sufficient to allow petitioner to have his federal claims considered as he moves through the state system. If an appropriate remedy does not exist or its utilization is frustrated by the state system, ... [t]he deference accorded the state judicial process must give way to the primary role of the federal courts to redress constitutional deprivations.

Id. at 249 (alterations in original).

15

delay in inordinate."); see also Jackson v. Duckworth, 112 F.3d 878, 881 (7th Cir. 1997)("Inordinate, unjustifiable delay in a state-court collateral proceeding excuses the requirement of petitioners to exhaust their state-court remedies before seeking federal habeas corpus relief."). Heon's appeal of the hearing justice's February 17, 2012, denial of his application for PCR will presumably take at least a few months to be heard. If it is granted, the state supreme court will presumably remand the case again to the superior court for a hearing on the issue of laches. Thus, Heon is understandably frustrated because his application for PCR appears to be slowly bouncing back and forth between the state superior and supreme courts without the merits of his claims being addressed by either court.

Heon has been attempting to obtain relief (with varying degrees of diligence) for twenty years[17] and the pace of the state courts in considering his claims since the filing of his second application for PCR in 2008 has been, at best, languid. If he were still imprisoned as a result of the conviction being challenged, this Magistrate Judge would recommend the issuance of a conditional habeas order requiring that the state supreme court either rule on Heon's PCR claims within ninety days or release him from

---

[17] In 2000, Judge Lovegreen noted Heon's complaint that "the issues he raises have been handled in 'glacial fashion'...." R&R of 10/6/00 at 4.

16

confinement.[18] See Simmons v. Reynolds, 898 F.2d 865, 869 (2nd Cir. 1990)("The usual disposition of a meritorious habeas petition based on a delayed appeal is to grant an alternative writ that orders the state either to prosecute the appeal within a specified reasonable period of time, or to release the petitioner."); Roberts v. Gansheimer, No. 1:08 CV 1473, 2011 WL 3652430, at *2 (N.D. Ohio Aug. 19, 2011)(noting that the court granted conditional habeas relief which "directed the state to either grant [petitioner] leave to file a delayed appeal within 90 days, or to release him from custody"); see also Sayyah v. Farquharson, 382 F.3d 20, 28 (1st Cir. 2004)("six year delay in state appeal excused exhaustion requirement in federal habeas action")(citing Simmons, 898 F.2d at 867-68); id. ("excusing state prisoner's failure to exhaust state-law remedies before seeking federal habeas corpus relief on ground that he had suffered over five years of delay in attempting to vindicate himself in state court")(citing Burkett v. Cunningham, 826 F.2d 1208, 1218-19 (3rd Cir. 1987)); Hankins v. Fulcomer, 941

---

[18] At the March 27, 2012, hearing on the Motion, counsel for the State noted that the State had suggested in its prebrief for the 2010 appeal that the dismissal of Heon's application for PRC could be affirmed on the merits but that the state supreme court declined this invitation. See P.A., Ex. 16 (Prebrief of Appellee State of Rhode Island) at 3 (stating that there is "an alternative ground upon which the Superior Court's denial of Mr. Heon's post-conviction relief application may be summarily affirmed: The substantive grounds upon which Mr. Heon moved, in the Superior Court, to vacate his guilty pleas were plainly without legal foundation."); see also id. at 3 n.2 ("It is well established that this Court can affirm the Superior Court's judgment on grounds other than those relied upon by the trial court. State v. Lynch, 770 A.2d 840, 847 (R.I. 2001).").

17

F.2d at 247 (holding that "nearly eleven-year delay" by state court in deciding petitioner's post-sentencing motion for withdrawal of guilty plea was inordinate and rendered the state process ineffective to protect petitioner's rights); cf. Zamora-Trevino v. Barton, 727 F.Supp. 589, 591-92 (D. Kan. 1989)("if a person is being wrongfully detained and state courts are slow to act, immediate federal relief may be appropriate").

As both the Tenth and Fifth Circuits have observed:

> [t]he requirement to exhaust state remedies is not a jurisdictional limitation on the federal courts. Rather it is a matter of comity between the federal and state courts. The forbearance of the federal courts is based upon the assumption that the state remedies available to petitioners are adequate and effective to vindicate federal constitutional rights. When those state procedures become ineffective or inadequate, the foundation of the exhaustion requirement is undercut and the federal courts may take action.

Harris, 938 F.2d at 1066 (alteration in original)(quoting Shelton v. Heard, 696 F.2d 1127, 1128 (5th Cir. 1983)).

Here, however, the fact that Heon has been released from prison alters matters significantly. The Supreme Court has emphasized that:

> comity was the basis for the exhaustion doctrine: 'it is a principle controlling all habeas corpus petitions to the federal courts, that those courts will interfere with the administration of justice in the state courts only "**in rare cases where exceptional circumstances of peculiar urgency are shown to exist.**"'

Granberry v. Greer, 481 U.S. 129, 134, 107 S.Ct. 1671 (1987)(bold added)(quoting Ex parte Hawk, 321 U.S. 114, 117, 64 S.Ct. 448

18

(1944)). Given that Heon is no longer confined in prison and is suffering only the "burdens of probation," Gall v. United States, 552 U.S. 38, 70, 128 S.Ct. 586 (2007)(Alito, J., dissenting), and "collateral consequences," Carafas v. LaVallee, 391 U.S. 234, 237, 88 S.Ct. 1556 (1968), flowing from his conviction, this Court is unable to find that "exceptional circumstances of peculiar urgency ... exist," Granberry v. Greer, 481 U.S. at 134, here to excuse exhaustion. As Justice Alito has pointedly observed, "there is a huge difference between imprisonment and probation." Gall, 552 U.S. at 70, 128 S.Ct. 586.

Moreover, the recent representation by the State that "the parties have agreed to a post-conviction relief 'merits' hearing in the Rhode Island superior court," State's Response at 1, tips the scales heavily in favor of this Court not interfering in the state court process. See Maisonet v. Beard, Civil Action No. 07-772, 2009 WL 188032, at *1 (E.D. Pa. Jan. 26, 2009)(dismissing habeas petition without prejudice "[g]iven the recent progress in [p]etitioner's state-court case"); see also United States ex rel. Goodman v. Kehl, 456 F.2d 863, 869 (2nd Cir. 1972)(holding that district court erred in granting habeas corpus writ where state appeals court was scheduled to hear petitioner's application for relief only two days later); Eldelbacher v. Calderon, 160 F.3d 582, 587 (9th Cir. 1998)("our federal judiciary, 'anxious though it may be to vindicate and protect federal rights and federal interests,

19

always endeavors to do so in ways which will not unduly interfere with legitimate activities of the States'")(quoting Younger v. Harris, 401 U.S. 37, 44, 91 S.Ct. 746 (1971)).

Accordingly, I find that Heon has not shown that "exceptional circumstances of peculiar urgency ... exist," Granberry, 481 U.S. at 134, which excuse him from exhausting his state court remedies. Therefore, I recommend that the Motion be granted and that the Petition be dismissed without prejudice.

### Conclusion

For the reasons stated above, I recommend that the Motion to Dismiss be granted and that the Petition be dismissed without prejudice. Any objections to this Report and Recommendation must be specific and must be filed with the Clerk of Court within fourteen (14) days of its receipt. See Fed. R. Civ. P. 72(b); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district court and of the right to appeal the district court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ *David L. Martin*
DAVID L. MARTIN
United States Magistrate Judge
July 25, 2012